## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JEFFREY LYNN CHAPPLE, JR.,**

      **Plaintiff,**

    **v.**

**FRANKLIN COUNTY SHERIFFS
OFFICERS FCC1 & 2,** *et al.*,

      **Defendants.**

          **Case No. 2:21-cv-5086**
          **CHIEF JUDGE ALGENON L. MARBLEY**
          **Magistrate Judge Elizabeth P. Deavers**

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Jeffrey Lynn Chapple, Jr., has filed an action alleging violations of his civil rights, presumably under 42 U.S.C. § 1983.  He has named twenty defendants, plus some unknown defendants.  (Complaint, ECF No. 1-1, PageID 12, 15, 18.)  Defendants all appear to be officers or officials of the Franklin County Sheriff's Office and/or the Franklin County Corrections Centers, where Chapple is currently in custody awaiting trial.  (*Id.*)  Chapple is proceeding in this action without counsel and has been granted leave to proceed *in forma pauperis.*  (ECF No. 22.)

The matter is currently before the undersigned Magistrate Judge to conduct the initial screen required by law.  28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2).  For the following reasons, the Undersigned **RECOMMENDS** that Chapple be allowed to **PROCEED** at this time on his excessive force claims against Defendants Curren, John Jones, Sgt. Neal, Robinson, Bateman, and Sgt. Neely (in their individual capacities).  The Undersigned further **RECOMMENDS** that Chapple be allowed to **AMEND** the one conditions of confinement claim

identified herein and his religious rights claim. The Undersigned **RECOMMENDS** that the remaining claims against the remaining defendants and non-parties be **DISMISSED**.

## I. Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

Finally, in the interest of justice, this Court is required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f)). Even with such a liberal construction, a pro se complaint must

2

still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II.    Claims and Defendants

Plaintiff Chapple's 16-page, handwritten Complaint contains numerous allegations of wrongdoing by Defendants during his pre-trial detention at the Franklin County Corrections Centers (together "FCCC").[1]  (ECF No. 1-1, PageID 16, 19-27.)   Chapple explains elsewhere that he is in custody at FCCC awaiting trial in Franklin County Common Pleas Court.[2]  (Letter, ECF No. 15, PageID 106.)

Chapple does not identify or organize his claims, and does not cite to any legal or constitutional provisions in the Complaint.  (ECF No. 1-1, cited hereinafter as "Complaint"). The facts in the Complaint can be generally grouped into the following categories, discussed in the corresponding sections below:

A.  Official capacity claims

B.  Conditions of confinement claims

C.  Personal property claims

D.  Disciplinary claims

E.  Grievance procedure claims

---

[1] Chapple refers to "FCCC 1 & 2" in his Complaint, presumably referring to the Franklin County Corrections Center I ("FCCC I") and the Franklin County Corrections Center II ("FCCC II"), respectively. *See* https://sheriff.franklin countyohio.gov/About/Divisons/Corrections (accessed March 15, 2022). Chapple was in custody at FCCC I when he filed the Complaint.  (ECF No. 1-1, PageID 12.)

[2] The Franklin County Common Pleas Court's website reflects that Chapple is the defendant in Case No. 20CR3865. *See* https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/caseSearch?tfzxs5QxwDgUhiGLQd3B (accessed March 15, 2022). The case is ongoing.

     F.   Failure-to-protect claims

     G.   Religious rights claims

     H.   Excessive force claims

Chapple asks this Court to investigate his allegations and take action to address his pain and suffering.  (Complaint, PageID 17.)  He also asks for a jury trial.  (*Id.*)

Although the Complaint does not specify, the Undersigned reads most of the Complaint to attempt to raise claims of constitutional deprivation under 42 U.S.C. § 1983.  To state a cause of action under § 1983, a plaintiff must allege:  "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).  The specific facts relevant to each category are described in the Discussion sections below.

Chapple names the following individuals as Defendants:  Chaplain Chambers; Captain Vince Brammer; Lt. Myers; Penny Perry, Chief of Corrections; Kirkpatrick; Sgt. Neal; John Jones; Curren; Boyd; Sgt. Clyburns; Kaylor; Zalipski; Sgt. Roger Howard; Robinson; Sgt. Neely; Bateman; Lt. D. Johnson; Dorion; McGaryity; and Blake.  (Complaint, PageID 12, 15, 18.)  He also names unknown "Franklin County Sheriffs' Officers FCCC1 & 2" as defendants. (*Id.*, PageID 12.)

## III.   Discussion

The Complaint is not entirely legible or comprehensible.  (ECF No. 1-1.)  It details a number of apparently unconnected events ranging from the inconveniences of custodial life (e.g., not being permitted to shower at the requested time, or not being given clean mop water upon request) to allegations of excessive force and failure to protect Chapple from other inmates'

violence. The Complaint lists approximately 33 incidents occurring over approximately 14 months. It presents a diary-like account of daily events at FCCC. The Undersigned has endeavored to group and categorize Chapple's allegations into potential constitutional violations for screening purposes, as detailed below. *See Barhite*, 377 F. App'x at 511 (citing *United States v. McDonald,* 326 Fed. App'x 880, 882 (6th Cir. 2009)) ("courts may elect to recharacterize pro se filings for the benefit of the pleader"). Chapple's excessive force claims should survive this initial screening, and the Undersigned recommends that the Court give Chapple an opportunity to amend one identified conditions of confinement claim, as well as his religious rights claims. But even construing the Complaint liberally, most of Chapple's allegations simply do not rise to the level of a constitution deprivation that can be pursued under § 1983.

### A.     Official Capacity Claims

Before discussing the substance of the Complaint, the Undersigned considers the defendants against whom the claims are made. The Complaint does not indicate whether Chapple is suing the defendants in their official capacities or their individual capacities. "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)). Here, to the extent Chapple has sued the Defendants in their official capacities, his claims are essentially against Franklin County.

5

A local government like Franklin County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)).  A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

In this case, Chapple has not alleged any facts from which the Court could conclude that an official policy or custom of Franklin County resulted in a violation of his constitutional rights. The Complaint does not refer to any official policies or customs.  The Undersigned therefore **RECOMMENDS** that all claims against the Defendants *in their official capacities* be **DISMISSED**.

The claims against the Defendants *in their individual capacities* are evaluated separately in the Sections below.

### B.      Conditions of Confinement Claims

Much of the Complaint concerns events or circumstances that could be characterized as "conditions of confinement" claims under the Eighth or Fourteenth Amendments to the United States Constitution.  U.S. CONST. amend. VIII and XIV, § 1.  Some allegations concern the cleanliness of Chapple's cell at FCCC.  For example, Chapple alleges that on July 14, 2021, "[t]he cell was nasty & they didn't get me cleaning supplies."  (Complaint, ¶ 16.)  On September 20, 2021, he was given a dustpan that had feces on it, which he was able to exchange for a clean dustpan on request.  (Complaint, ¶ 22.)  On October 4, 2021, he was given a dirty broom with dust on it, which he was permitted to exchange for a clean broom on his request.  (Complaint, ¶ 28.)  He was not, however, given clean mop water upon request.  (Complaint, ¶ 28.)

Some allegations in the Complaint concern Chapple's personal hygiene requests.  For example, one day in April 2021, he was not given toothpaste on request.  (Complaint, ¶ 11.)  On September 11, 2021, Chapple did not get to take his anticipated shower after arguing with officers.  (Complaint, ¶ 20.)  On September 13, 2021, an officer "didn't give me a shower when I requested a shower."  (Complaint, ¶ 21; *see also* ¶ 25.)

Some allegations concern the food provided at FCCC.  Chapple alleges that on some days during the month of Ramadan in 2021, food trays were short on portions and sometimes food items were missing.  (Complaint, ¶ 13.)  He alleges that some trays were "dropped" but were still distributed to inmates.  (Complaint, ¶ 13.)  One day, the inmates were served bad milk, which Chapple poured out onto his tray rather than drink.  (Complaint, ¶ 15.)

Chapple asserts that on several occasions, he was given food trays that were "messed with."  Specifically, on October 4, 2021, his coleslaw looked like it was messed with.  (Complaint, ¶ 28.)  On September 21, 2021, his potatoes were "everywhere" on the tray and

7

looked like someone did something to them. (Complaint, ¶ 23.) On September 24, 2021, he was given a tray that was messed with, but it was exchanged for a new tray at his request. (Complaint, ¶ 24.) On September 26, 2021, the sides looked like they were messed with, and the hot dog tasted funny. (Complaint, ¶ 26.) On days that the trays were served by officers that Chapple didn't trust, he gave away his tray and ate from his commissary bag instead. (Complaint, ¶ 13.) With the exception of the incident described next, Chapple does not further articulate *how* these items were "messed with."

Chapple alleges that one day he was given a tray that "the burger was bitten off & the fries had body fluids 'cum' on them." (Complaint, ¶ 11.) Chapple kept the tray for almost a month in his cell. (Complaint, ¶¶ 11, 14.) He requested that they tray be tested for DNA, but testing was not performed. (Complaint, ¶ 11.) Officers also declined to DNA test another tray Chapple suspected of having been messed with, as it had been kept in his cell for too long. (Complaint, ¶ 26.)

Finally, Chapple alleges that he has complained about the water at FCCC but has not been given alternative water to drink or shower with. (Complaint, ¶ 30.)

With one exception, these allegations, although understandably serious to Chapple, do not rise to the level of a constitutional violation. It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cty. Sheriff Dep't,* No. 1:10CV672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). And, the Eighth Amendment protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, which includes "extreme deprivations" that deny "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) and

8

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "But the Eighth Amendment does not apply to pretrial detainees like [plaintiff]."  *Greene v. Crawford Cty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004)).  State pretrial detainees are instead protected by the Due Process Clause of the Fourteenth Amendment.  U.S. CONST. amend. XIV, § 1; *Greene*, 22 F.4th at 605; *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 n.9 (2007).

The Due Process Clause "provides similar if not greater protections than the Cruel and Unusual Punishments Clause" of the Eighth Amendment.  *Spencer,* 449 F.3d at 727 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) and *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).  To state a claim under either Fourteenth or Eighth Amendment in this context, a plaintiff must allege (among other things) that an objectively "sufficiently serious" deprivation has occurred, "resulting in a denial of the 'minimal civilized measure of life's necessities.'" *Francis v. Altiere*, 491 F. App'x 539, 541 (6th Cir. 2012) (quoting *Farmer,* 511 U.S. at 834); *Spencer*, 449 F.3d at 728.

As noted, "*extreme* deprivations are required to make out a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 9 (emphasis added).  "Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Pena v. Brown*, No. 2:20-cv-250, 2021 WL 4350124, at *5 (W.D. Mich. Sept. 23, 2021) (collecting cases).

Conditions of confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."  *Lamb v. Howe*, 677 F. App'x

204, 209 (6th Cir. 2017). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000)). For example, "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

     1.   *Sanitation and Hygiene Issues*

     Chapple alleges that on one specific occasion, the cell he was in "was nasty." (Complaint, ¶ 16.) He explains that on June 14, 2021, his things were moved from Cell 5 to Cell 3. He was apparently supposed to stay in Cell 5 for five days. He says: "The cell was nasty & they didn't get me cleaning supplies. The next day I told 'Sgt.' Brost and he moved me back because I wasn't supposed to move." (*Id*. at ¶ 16.) There is no further detail given about the state of the cell or why it was nasty.

     Chapple's bare assertion that the cell he was in for one day was "nasty" is insufficient to state a claim. *See Fennell v. Bonner*, No. 2:20-cv-2844, 2021 WL 3891590, at *7 (W.D. Tenn. Aug. 31, 2021) (plaintiff's mere "characterization of [his] housing as 'unsanitary' does not suffice to render those accommodations unconstitutional"). It also fails to state a sufficiently serious deprivation of Chapple's need for sanitation. *See Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (holding that a deplorably filthy and patently offensive cell with excrement and vomit was not unconstitutional because these conditions lasted for only 24 hours); *Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (allegations of unsanitary conditions, "including the presence of defective pipes, sinks, and toilets, improperly-cleaned showers, a

broken intercom system, stained mattresses, accumulated dust and dirt, and infestation by roaches and rats," are not sufficiently serious to satisfy the objective component of an Eighth Amendment violation); *Hunter v. Parnell*, No. 5:17-CV-P32, 2017 WL 3202734, at *3 (W.D. Ky. July 27, 2017) (holding that "the conditions described—insects, having to sleep on the floor/table, an unsanitary mat, a dirty floor, and inadequate ventilation—fail to state a constitutional violation").

And, because Chapple "does not describe cell conditions [at the prison] for which he needed cleaning materials," he "does not identify 'conditions posing a substantial risk of serious harm'" with respect to his allegation that he was not given cleaning supplies on June 14, 2021. (Complaint, ¶ 16.)  *Fennell*, 2021 WL 3891590, at *6 (quoting *Farmer*, 511 U.S. at 834).  These allegations are not, objectively, sufficiently serious enough to state a constitutional claim. *See also Bass v. Strode*, 1:12CV-P182-R, 2012 WL 5834123, at *3-4 (W.D. Ky. Nov. 16, 2012) (finding plaintiff's claim that, for 72 hours, he was "forced to eat and sleep on the floor without cleaning supplies . . . fail[s] to allege a constitutional violation."); *Mackey v. Carberry*, No. 2:07-cv-43, 2007 WL 2479296, at *5 (W.D. Mich. Aug. 28, 2007) (dismissing claim of lack of access to cleaning supplies as failing to point to a sufficiently serious deprivation).

Instead, "Plaintiff's allegations concerning the lack of supplies to clean his cell raise relatively minor and temporary inconveniences."  *Pena*, 2021 WL 4350124, at *7 (citing *Lamb*, 677 F. App'x at 209 and *Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018)).  In *Pena*, for example, the court found that plaintiff's stay in a dirty cell for a about a week without cleaning supplies "fall[s] short of meeting the objective component" of such a constitutional claim.  2021 WL 4350124, at *7.

11

For the same reasons, Chapple's allegation that he was given a dustpan and broom to clean with that were already dirty with dust or feces fails to state a claim of constitutional dimension. (Complaint, ¶¶ 22, 28.) *Park v. Holdren*, No. 1:17-cv-439, 2018 WL 1901798, at *3 (S.D. Ohio Apr. 20, 2018), *report and recommendation adopted*, 2018 WL 3648234 (S.D. Ohio Aug. 1, 2018) (collecting cases) ("the Sixth Circuit and other courts have held that a temporary exposure to human waste does not meet the objective component of the Eighth Amendment"). Chapple notes that the dirty tools were exchanged upon his request. (Complaint, ¶ 22, 28.) These minor and temporary inconveniences did not deprive Chapple of "the minimal civilized measure of life's necessities." *Hudson*, 503 U.S. at 9.

Chapple's allegation he was not given toothpaste upon request one day in April 2021 also reflects only a minor inconvenience. (Complaint, ¶ 11.) While "[t]he Sixth Circuit has recognized that the complete denial of a toothbrush or toothpaste for an extended period may constitute an objectively serious deprivation of basic hygiene needs," *Pena*, 2021 WL 4350124, at *7, that court has also "concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time ..., i.e., only six days' is not actionable conduct. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *see also Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

Here, Chapple has alleged the denial of a request for toothpaste on a single day. (Complaint, ¶ 11.) His allegation therefore reflects only a temporary and minor deprivation and therefore fails to state a claim. *See Pena*, 2021 WL 4350124, at *7 (collecting cases) ("a short-term denial of a toothbrush or toothpaste falls short of constituting such a deprivation"); *compare Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate

was deprived of toothpaste for 337 days and experienced dental health problems were sufficient to state an Eighth Amendment claim).

Chapple's allegation that he was denied a shower upon request on three occasions in September 2021 is also not, objectively, sufficiently serious. (Complaint, ¶¶ 20, 21, 25.) Notably, Chapple does not allege that he was denied a shower altogether on these non-consecutive days, but that he was not allowed to shower at the exact time he wanted to shower. (*Id.*) These allegations do not rise to the level of a sufficiently serious deprivation. *See Evans v. Frias*, No. 1:20-cv-803, 2020 WL 6253700, at *7 (W.D. Mich. Oct. 23, 2020) (the denial of a shower on three occasions does not state a claim); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (the denial of daily showers does not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful condition for six days one year and ten days the next year); *Siller v. Dean,* No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment).

Because Chapple's sanitation and hygiene allegations are not, objectively, sufficiently serious, the Undersigned **RECOMMENDS** that any conditions of confinement claims based on those allegations be **DISMISSED**.

### 2. *Food Tray Issues*

All but one of Chapple's concerns about his food trays are insufficient to state a claim under the Eighth or Fourteenth Amendments. First, while "[p]rison officials are required to provide inmates with adequate food . . . [c]omplaints about the preparation or quality of prison food generally do not amount to Eighth Amendment violations." *Shirley v. Hynes-Simms*, No. 3:21-CV-00467, 2021 WL 3550729, at *6 (M.D. Tenn. Aug. 11, 2021). A constitutional claim is

raised "only when the food provided is inadequate 'to maintain normal health.'" *Perdue v. Ohio Dep't of Corr.*, No. 1:13cv878, 2014 WL 661707, at \*5-6 (S.D. Ohio Feb. 19, 2014) (quoting *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977)). There are no allegations in the Complaint that the food at FCCC was inadequate to maintain health, or that Chapple's health suffered because of these food tray issues.

Chapple's assertion that food trays were sometimes dropped, short on portions, or missing items during Ramadan in 2021 fails to state a constitutional claim. (Complaint, ¶ 13.) *Shirley*, 2021 WL 3550729, at \*6; *Perdue*, 2014 WL 661707, at \*6 ("plaintiff's conclusory allegation that the . . . meals are 'inadequate' is insufficient to state a claim"). Even "the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation." *Turner v. Gilbertson*, No. 2:17-CV-65, 2017 WL 1457051, at \*5 (W.D. Mich. Apr. 25, 2017). As a point of comparison, the Sixth Circuit has held that the deprivation of seven entire meals over a six-day span does not rise to the level of a constitutional violation. *Richmond*, 450 F. App'x at 456. And, serving inmates only one meal a day for 15 days was found to be constitutionally sufficient where the inmate received sufficient caloric intake from that one meal to maintain normal health. *Cunningham v, Jones*, 667 F.2d 565, 566 (6th Cir. 1982). Thus, small portions or occasional missing items on a food tray "fall far short of the serious deprivation" required for a constitutional claim. *Turner,* 2017 WL 1457051, at \*5 (missing packets of crackers with meals was insufficient to state a claim).

Chapple's allegation that he was served bad milk one day also does not state a claim. (Complaint, ¶ 15.) "In numerous cases, courts have held that a single incident or occasional instances of spoiled food or food poisoning does not amount to an Eighth Amendment violation." *Turner*, 2017 WL 1457051, at \*7 (collecting cases).

14

Turning to the allegations that Chapple's food trays were "messed with," the Undersigned **RECOMMENDS** that the Court allow Chapple's allegation that John Jones and Kirkpatrick passed him a tray with semen on the fries (Complaint, ¶ 11) to proceed at this time, subject to the amendment discussed below. *See Sango v. Ault*, No. 1:14-CV-345, 2014 WL 1744726, at *7 (W.D. Mich. Apr. 30, 2014) (allowing plaintiff's claim that a defendant "allegedly placing semen on the cake on Plaintiff's food tray" to proceed past initial screening).

Chapple's remaining allegations that his food trays were "messed with" fail to state a claim. These assertions (or suspicions) are speculative and vague; Chapple does not allege, for example, that he saw anyone mess with his trays, or that someone told him they saw the trays being messed with. He does not articulate *how* they were messed with. He alleges only that it looked like his coleslaw, potatoes, or side dishes had been messed with in some way. (Complaint, ¶¶ 23, 24, 26, 28.) The Court is required to take these statements, to the extent they can be considered are well-pleaded facts, as true for the purposes of this screen. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, while Chapple's suspicions may be concerning, but they do not reflect an extreme deprivation of the minimal civilized measure of life necessities. *Hudson,* 503 U.S. at 9; *see Lane v. Love,* No. 3:21-CV-346, 2021 WL 5710086, at *3 (E.D. Tenn. Dec. 1, 2021) (citing *Prophete v. Gilless*, 869 F. Supp. 537, 538-39 (W.D. Tenn. 1994) (where plaintiff "provides no support for his speculative assertion that the jail food may be hazardous," his allegations fail to state a claim).

"[T]o state a constitutional violation for unsanitary food preparation, a prisoner must do more than allege a single or isolated incidents of contamination." *Harrell v. Blue*, No. 4:09CV-P104-M, 2010 WL 693497, at *3 (W.D. Ky. Feb. 16, 2010) (citing *Hamm v. DeKalb Cty.,* 774 F.2d 1567, 1575 (11th Cir. 1985)). "The fact that the [prison] food occasionally contains foreign

15

objects or sometimes is served cold, while unpleasant, does not amount to a constitutional

deprivation." *Harrell,* 2010 WL 693497, at *3 (quoting *Smith v. Younger,* No. 95-5482, 1999

WL 623355, at *2 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's

Eighth Amendment claim based on the presence of a worm in her peanut butter).  Accepting that

Chapple's side dishes were messed with in some way, these isolated incidents do not rise to the

level of a constitutional violation.  *Harrell,* 2010 WL 693497, at *3.

In addition, Chapple does not allege that any particular person or defendant messed with

his food trays.  He does allege that certain officers *passed* or *handed* him trays that looked like

they were messed with during meal delivery times, but he does not allege that these officers

messed with the trays themselves.  (Complaint, ¶ 23 ("Blake passed me my tray & the potatoes

was everywhere on the tray as if someone did something to it."); ¶ 24 ("Bateman gave me a tray

that was messed with."); ¶ 26 ("At Dinner 9-26-21 the tray Boyd gave to me I showed the

camera & when I brought it inside of my food tray I seen that the sides looked like they was

messed with …."); ¶ 28 ("I showed the camera my food tray before pulling it thru my food trap

then when I looked at it the cole slaw looked like it was messed with so I asked to see another

tray & he [presumably, Carman[3]] showed one to me, it looked like it was straight off the food

assembly line. So I thew that tray straight into the trash.")).  Chapple's allegation that John Jones

and Kirkpatrick passed him a tray with semen on the fries suffers from this same problem.

(Complaint, ¶ 11 ("When they passed me my tray the burger was bitten off & the fries has body

fluids 'cum' on them.").

There are no allegations in the Complaint about *who* purportedly tampered with

Chapple's food trays.  The *who* is important; to state a claim under § 1983, Chapple must allege

---

[3] Carman is not named as a defendant.

16

the violation of a constitutional right by a person acting under color of state law.  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).  Chapple may have his suspicions, based on those officers he "didn't trust" (Complaint, ¶ 13), but the Complaint contains no allegations about whether the food trays were messed with by other inmates, porters, contracted food service personnel, specific officers, or others.  This failure to identify a defendant acting under color of state law is a failure of the required "basic pleading essential[s]."  *See Sango*, 2014 WL 1744726, at *3 (W.D. Mich. Apr. 30, 2014) (citing *Twombly*, 550 U.S. at 544) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.").

For these reasons, the Undersigned **RECOMMENDS** that all but one of Chapple's claims about his food-tray issues be **DISMISSED** for failure to state a claim.  In the interest of justice, the Undersigned **RECOMMENDS** that the Court allow Chapple the opportunity to amend the claim in Paragraph 11 of the Complaint (ECF No. 1-1, PageID 21, ¶ 11) about semen on his fries to address this deficiency.

   *3. Water Issue*

Chapple alleges that he has spoken to several floor officers "about how the water look, taste & make me feel" but has not been given different water to drink or shower with.  (Complaint, ¶ 30.)  Chapple does not articulate what is wrong with the water, or describe how it looks, tastes, or makes him feel.  This allegation falls short of alleging an extreme deprivation.  Chapple simply has not pled "enough facts to state a claim to relief that is plausible on its face" with respect to the water at FCCC.  *Twombly*, 550 U.S. at 570.

For these reasons, the Undersigned **RECOMMENDS** that all of Chapple's conditions of confinement claims be **DISMISSED**, except the claim in Paragraph 11, which Chapple should be given the opportunity to amend.

### C. Personal Property Claims

Chapple asserts that several items of his personal property have been taken from him. First, Chapple asserts that when he was moved from the "Glass Room" and placed in a "Pickle Suit,"[4] officers took 2 pairs of boxers and 3 pairs of socks from or off of him. (Complaint, ¶ 7.) These items were not returned. (*Id*.) On April 30, 2021, when the whole range was searched after an incident, officers took a tray from Chapple's cell that had two cakes and two fish "from earlier." (Complaint, ¶ 14.)

An inmate took a box containing food and commissary items out of Chapple's cell on February 19, 2021. (Complaint, ¶ 9.) Another day, while Chapple was being treated for eye irritation after another inmate threw feces at him and he "returned the favor," someone took his box containing "grease," deodorant, and a book from his cell. (Complaint, ¶ 10.)

Any potential claim against other inmates for taking Chapple's personal property cannot succeed under § 1983. As noted above, a § 1983 claim is only available against a person acting under color of state law. *Hunt*, 542 F.3d at 534. Such a claim is generally not available against private actors. *Weser v. Goodson*, 965 F.3d 507, 515-16 (6th Cir. 2020). While there are exceptions to this rule, Chapple does not raise any. Therefore, any claims against other inmates for taking Chapple's personal property should be dismissed. *Perdue v. Ohio Dep't of Corr.*, No. 1:13cv878, 2014 WL 661707, at *3 (S.D. Ohio Feb. 19, 2014) (dismissing § 1983 claim against inmates where the complaint did not allege that inmates acted under color of state law); *Lane v.*

---

[4] A "pickle suit" is "a heavy green suicide prevention gown." *Pfeiffer v. Butler Cty. Sheriff Dep't*, No. 1:10cv672, 2012 WL 1203557, at *2 (S.D. Ohio Apr. 10, 2012).

*Warden, Noble Corr. Inst.*, No. 2:20-cv-5492, 2022 WL 160061, at *3 (S.D. Ohio Jan. 18, 2022) (dismissing § 1983 claim against fellow inmate, because he was "a private party, he did not act under color of law and therefore is outside the scope of Section 1983").

Any potential claim against the officers or officials at FCCC for allowing inmates to take Chapple's personal property likewise cannot succeed. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984) and *Lucien v. Johnson*, 61 F.3d 573, 575-76 (7th Cir. 1995)) ("Plaintiff's allegation that other inmates stole his property fails to state a claim against the prison officials because the prison's negligence in allowing the theft is not a 'taking' for purposes of the Fourteenth Amendment.").

Finally, to the extent that Chapple intended to raise a claim against the Defendants because they took his personal property without due process of law, his Complaint does adequately plead such a claim. The United States Supreme Court has held that a plaintiff "deprived of property through a random and unauthorized act" of a governmental employee does not state a due process claim "merely by alleging the deprivation of property." *Darling v. Lake Cty. Bd. of Comm'rs*, No. 1:12CV194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012), (citing *River City Capital, L.P. v. Bd. of Cty. Com'rs, Clermont Cty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981))). A plaintiff must also plead "that state remedies for redressing the wrong are inadequate." *Perdue*, 2014 WL 661707, at *5 (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983) and citing *Hudson*, 468 U.S. 517 and *Parratt*, 451 U.S. 527).

Where, like Chapple here, a "Plaintiff has not alleged any facts which indicate that the state post-deprivation remedies are inadequate or unavailable to redress the wrong," a claim must be dismissed. *Thompson v. Esham*, No. 1:15cv553, 2016 WL 692542, at *1 (S.D. Ohio Feb. 22,

2016) (citing *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).  Accordingly, the Undersigned **RECOMMENDS** that the personal property claims be **DISMISSED**.

### D.    Disciplinary Claims

Chapple reports several occasions on which he was put on restriction, written up, moved, denied recreation, or had his security level increased.  For example, he was moved to a different cell after other inmates near him covered the windows, "greased up" the camera, and thew water under the doors.  (Complaint, ¶ 3.)  Although Chapple did not have anything to do with that, they moved him, and a few days later, increased his security level.  (Complaint, ¶ 4.)  Chapple was put on 48-hour restriction after exchanging words with an officer (Complaint, ¶ 8) and throwing food on the floor (Complaint, ¶ 11.)  On one occasion, Chapple was written up, but eventually found not guilty.  (Complaint, ¶ 16.)  On another, he was put on restriction, but it was later removed.  (Complaint, ¶ 15.)  On August 5, 2021, Sgt. Neely lied and said that Chapple disrespected staff, and consequently didn't let him have recreation that day.  (Complaint, ¶ 17.)

These allegations, even taken as true, do not state a constitutional claim under § 1983.  First, a prisoner has no constitutional right to any particular security level.  *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002).  Even if Chapple's security classification was "raised without any precipitating incident, 'an increase in security classification... does not constitute an atypical and significant hardship' sufficient to require procedural due process prior to the reclassification."  *Shuler v. Hall*, No. 3:18-cv-1223, 2019 WL 1777899, at *3 (M.D. Tenn. Apr. 23, 2019) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)).

Discipline imposed by jail officials on pretrial detainees is not categorically prohibited by the Constitution.  *J.H. v. Williamson Cty., Tenn.,* 951 F.3d 709, 717 (6th Cir. 2020).  While, as a

general proposition, a pretrial detainee cannot be "punished" for the crime with which he has

been charged, some institutional discipline is allowed.  *See Bell v. Wolfish*, 441 U.S. 520, 535,

546 (1979).  And, "even if it may reasonably be inferred that the purpose of the alleged

governmental action is punishment, '[t]here is... a de minimis level of imposition with which the

Constitution is not concerned.'"  *Shuler*, 2019 WL 1777899, at *2 (quoting *Bell*, 441 U.S. at

539).

The Sixth Circuit has recognized that "disciplinary measures based on a pretrial

detainee's misconduct in custody must be proportional thereto in order to avoid qualifying as

unconstitutional punishment."  *J.H.,* 951 F.3d at 718 (quoting *Williamson v. Stirling*, 912 F.3d

154, 176 n.18 (4th Cir. 2018) (internal citations and quotations omitted)).  Here, although

Chapple suggests that he was treated unfairly, or was falsely accused, the discipline he describes

is not excessive or disproportional to his alleged behavior and does not rise to the level of a

constitutional violation.  The Undersigned notes that Chapple acknowledges in the Complaint

several behaviors that would reasonably prompt disciplinary measures.  (Complaint, ¶ 10

(throwing feces at another inmate); ¶ 10 (throwing food on the floor); ¶ 14 (swearing at officers

and refusing to take cuffs off); ¶ 20 (refusing to let officer double lock the cuffs); ¶ 20 (admitting

that he "spoke [his] mind" and "resisted a little").

Accordingly, the Undersigned **RECOMMENDS** that the disciplinary claims be

**DISMISSED**.

### E.    Grievance Procedure Claims

Chapple alleges several problems with the "call card"/grievance procedure at FCCC.  For

example, he asserts that:  there was no response to his call card asking for a prayer rug

(Complaint, ¶ 12); there was no response to his call card asking for a grievance seeking DNA

testing of a food tray (Complaint, ¶ 26); he received an untimely response to a grievance

(Complaint, ¶ 27); and a call card was returned to him because it was blank, but it hadn't been

blank when he submitted it (Complaint, ¶ 28).  Although not explained in the Complaint, it

appears from context that call cards may be used to request items at FCCC, including grievance

forms.

Chapple alleges that officers sometimes mess with grievances or do not give inmates the

appropriate grievance forms.  (Complaint, ¶ 19.)  Additionally, he alleges that officers "try to

make it seem as if [an inmate's] complaint was false" or try to cover up their unlawful behavior.

(*Id*. at ¶ 29.)

These allegations fail to state a claim for relief under § 1983 with respect to FCCC's

grievance procedure.  As noted above, to state a § 1983 claim, Chapple must allege the

deprivation of a *constitutional* right.   *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x

346, 348 (6th Cir. 2001) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)).  But "there

is no inherent constitutional right to an effective prison grievance procedure."  *Argue v.*

*Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

Therefore, even if the institutional grievance procedure at FCCC is ineffective or Chapple

cannot access it as he would like, his allegations do not state a claim of *constitutional* dimension.

*See Lee v. Mich. Parole Bd.,* 104 Fed. App'x. 490, 493 (6th Cir. 2004) ("Section 1983 liability

may not be imposed simply because a defendant denied an administrative grievance or failed to

act based upon information contained in a grievance."); *Goff v. Chambers-Smith*, No. 1:21-cv-

315, 2021 WL 2279808, at *3 (N.D. Ohio June 4, 2021) (quoting *Grinter v. Knight*, 532 F.3d

567, 576 (6th Cir. 2008) ("The Sixth Circuit has clearly stated that '[t]he denial of administrative

grievances or the [mere] failure to act by prison officials does not subject supervisors to liability under § 1983.")) (internal quotation and citation omitted).

The Undersigned therefore **RECOMMENDS** that Chapple's grievance procedure claims be **DISMISSED**.

### F.     Failure-to-Protect Claims

Chapple identifies two incidents that could be classified as failure-to-protect claims.

First, on August 12, 2020, when Chapple was booked into FCCC:

> They placed me in a "medical" tank & once a few guys knew that placed money on other people's inmate account they told me that I owe them half of that. This ended up with 3 inmates beaten me & with a oxygen hold part from a wheelchair. I was rushed to Grant Hospital with the need of serious medical need. I don't have the names of the officers that booked me in that day.

(Complaint, ¶ 1.)  There are no other allegations about this incident in the Complaint.

Second, Chapple describes an incident where another inmate "back handed" him and got in trouble for it:

> On 8-27-21 while walking from shower passed inmate "Emmanuel Childs" cell he back handed me they "the staff" acted like they didn't see it. So when he did [*illegible*] I stop & told him do it again a few times but Boyd who is holding the hand held camera pushed me & said keep walking. I placed my shower stuff in my cell & walked to the phone. When I got to the phone booth I asked them if they seen him back hand me & they said no but we gone look at the camera & Zalipski went back there & the inmate said yes he did so they placed violation on him. They wasn't gone to do anything unless I said something.

(Complaint, ¶ 18.)

"Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners."  *Dellis,* 257 F.3d at 512 (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) and *Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir.1998)).   The "Eighth Amendment's prohibition of cruel and unusual punishment . . . requires prison officials to take reasonable measures to guarantee the safety of the inmates."  *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th

Cir. 2009) (quoting *Farmer*, 511 U.S. at 832 and *Hudson*, 468 U.S. at 526-27) (internal quotation marks omitted). However, "not 'every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety.'" *Hamilton,* 341 F. App'x at 171 (quoting *Farmer*, 511 U.S. at 834).

As discussed above, a pretrial detainee like Chapple is protected by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Bell*, 441 U.S. at 535 n. 16). "To sustain a claim under the Eighth Amendment for a prison official's failure to provide protection from conduct that violates civilized standards of decency, the plaintiffs must show that [defendant] was deliberately indifferent to "a substantial risk of serious harm." *Buetenmiller v. Macomb Cty.*, No. 20-11031, 2022 WL 203000, at *6 (E.D. Mich. Jan. 20, 2022) (citing *Farmer,* 511 U.S. at 828). In cases involving pretrial detainees under the Fourteenth Amendment, the standard for deliberate indifference requires that a plaintiff plead (and show) that a defendant

> not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970 (describing, and rejecting as inapplicable to Eighth Amendment deliberate-indifference claims, the civil standard for recklessness). A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")[.]

*Brawner v. Scott Cty., Tennessee*, 14 F.4th 585, 596-97 (6th Cir. 2021) (modifying the deliberate indifference standard for pretrial detainees after the United States Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)) (emphasis added). *See also Buetenmiller*, 2022

24

WL 203000, at *8 (citing *Greene v. Crawford Cty., Michigan*, 22 F.4th 593, 605-606 (6th Cir.

2022) (discussing the modified standard for pretrial detainees).

Chapple's allegations with respect to the first incident described above fail to state such a

claim.  There is no allegation that the inmates in the medical tank represented a high risk of harm

to Chapple that was known or so obvious it should have been known.  There is likewise no

allegation that the officers involved acted with reckless disregard for Chapple's safety.  The only

allegation is that other inmates beat Chapple and he required (and received) medical care.

(Complaint, ¶ 1.)  These facts are insufficient to plead a failure-to-protect claim.

Chapple fails to state a claim with respect to the second "back hand" incident for the

same reason.  (Complaint, ¶ 18.)  Moreover, this incident was not objectively, sufficiently

serious.  There is no suggestion that Chapple suffered any injury when inmate Childs

backhanded him.  And, Childs was apparently appropriately disciplined for it.  (*Id*.)  Chapple's

concern appears to be that Chapple had to tell someone that Childs hit him before Childs was

disciplined.  The Undersigned fails to see any constitutional violation in this respect.

Accordingly, the Undersigned **RECOMMENDS** that the failure-to-protect claims be

**DISMISSED**.

### G.    Religious Rights Claims

Chapple lists two incidents that could possibly raise a claim under the Free Exercise

Clause of the First Amendment or the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 U.S.C. § 2000cc-1.  First, Chapple alleges:

> It was the month of 11/2020 that "Chaplain" Chambers & I spoke about us
> "Muslims" being able to get Kufi's, Prayer Rugs, & Ka'ran's. He said that a
> Imam has to come down and donate them. So I call my mother & asked her to get
> her Imam to bring at least 10 Kufi's, 10 Prayer Rugs, & 10 Ka'ran's & donate it.
> Since it wasn't an overnight thing, "Chaplin" Chambers came back within a

couple of weeks later & told me that he talked to "Captain" Brammer & he denied it. This was when I was in 5 West 1 tank.

(Complaint, ¶ 5.) He later says:

On 4-12-21 I wrote "Lt" Myers because Chaplin Chambers wasn't here & asked for Prayer Rugs on a call card but since I took my copy off of it they gave it back saying it's incomplete write another one & keep all 3 copies on it. So I did so & never got a response nor prayer rugs. (The officers that worked the floor was involved & Lt. Taylor also)[.]

(Complaint, ¶ 12.) There are no other allegations in the Complaint about these incidents/claims.

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Penn.*, 141 S. Ct. 1868, 1876 (2021). "Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." *Hudson*, 468 U.S. at 523 (quoting *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)).

"Under § 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). "[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held* . . .'" *Colvin v. Caruso,* 605 F.3d 282, 298 (6th Cir. 2010) (quoting *Jackson v. Mann,* 196 F.3d 316, 320 (2d Cir. 1999) (emphasis in original)).

RLUIPA "prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d

26

554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). "To establish a cognizable

claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially

burdens a religious practice." *Id*. The practice must be traceable to a sincerely held religious

belief. *Id*. (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005)).

Here, Plaintiff has pled insufficient facts from which this Court can conclude that he has

a sincerely-held religious belief. While Chapple does refer once to "us 'Muslims'" (Complaint, ¶

5) and elsewhere mentions Ramadan as a time frame (Complaint, ¶ 11, 13), there is nothing else

in the Complaint beyond his request for these items from which to infer a sincerely-held belief.

*See Hernandez v. Pugh*, No. 4:12cv2040, 2013 WL 30194, at *2 (N.D. Ohio Jan. 2, 2013)

(quoting *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)) ("[T]he 'mere assertion of a

religious belief does not automatically trigger First Amendment protections. To the contrary,

only those beliefs which are both sincerely held and religious in nature are entitled to

constitutional protections.'"). Notably, it was his *mother's* Imam that he requested donate the

items, not his own.

With respect to the first incident, it is also notable that Chapple does not allege that he

was wholly denied and unable to possess a prayer rug, etc. His allegation is that either Chaplain

Chambers or Captain Brammer denied his request to allow his mother's Imam donate prayer

rugs, etc. to FCCC. (Complaint, ¶ 5.) And, with respect to the second incident, where Chapple

alleged that he received no response to his call card asking for a prayer rug, this claim also fails

under § 1983 because "a prison official's failure to respond to a prisoner's letter or grievance

does not state a constitutional claim." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 755 (E.D.

Mich. 2009).

These two brief allegations fail to state a free exercise or RLUIPA claim. *See Goff v. Chambers-Smith,* No. 1:21-CV-315, 2021 WL 2279808, at *4 (N.D. Ohio June 4, 2021) (plaintiff's allegations were insufficient to state either a free exercise or RLUIPA claim where he did not make "any specific allegation as to his religious beliefs or his belief system (indeed, he does not even specifically allege in his complaint that he is Jewish)"); *Hernandez v. United States*, No. 4:11 CV 1737, 2011 WL 5971028, at *4-5 (N.D. Ohio Nov. 28, 2011) (dismissing First Amendment claim regarding the service of kosher food on the grounds that plaintiff made no allegations regarding his own belief system or allege that his desire for kosher food was based on sincerely-held religious belief); *Davismoore v. Davis*, No. 1:18 CV 1468, 2019 WL 1558679, at 3-4 (N.D. Ohio Apr. 10, 2019) (dismissing First Amendment and RLUIPA claims, saying: " Plaintiff does not allege that he is Jewish. But the denial of his request for kosher meals by Davis, which is attached to the Complaint, identifies Plaintiff as a Messianic Jew. Plaintiff alleges that he was approved for kosher meals until December 4, 2017, when all kosher meals were stopped. But there is nothing in this claim, even if true, from which the Court can infer that maintaining a kosher diet is Plaintiff's sincerely held religious belief."). *Compare Covington v. Cadogen*, No. 1:18-CV-511, 2018 WL 4853342, at *2 (S.D. Ohio Oct. 5, 2018), *report and recommendation adopted*, 2018 WL 6069094 (S.D. Ohio Nov. 20, 2018) (allowing claim to proceed past initial screening where "Plaintiff allege[d] that it [was] essential to his Muslim beliefs to pray five times a day and "to focus on certain points on all Muslim rugs," that "he requires a prayer rug to cushion his knees" during prayer, and also alleged that "the denial of his request to purchase a prayer rug has made it difficult for him to practice his religion").

Nonetheless, the Undersigned **RECOMMENDS** that the Court afford Chapple an opportunity to **AMEND** the claim raised in Paragraph 5 of his Complaint (ECF No. 1-1, PageID 19, ¶ 5) to adequately plead a free exercise and/or a RLUIPA claim.

### H.     Excessive Force Claims

The United State Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  However, upon review of the allegations in the Complaint, the Undersigned **RECOMMENDS** that the Court allow Chapple's excessive force claims against the following Defendants, in their individual capacities, to proceed:

- Curren (Complaint, PageID 16, ¶ 2),

- John Jones and Sgt. Neal (Complaint, PageID 19, ¶ 6); and

- Robinson, Bateman, and Sgt. Neely (Complaint, PageID 24, ¶ 20).

The Undersigned expresses no opinion on the merits of these claims at this time.

### I.     Other Potential Claims Suggested in the Complaint

#### 1.   *Verbal Harassment*

Chapple notes some verbal harassment from some defendants.  (*See, e.g.*, Complaint, ¶¶ 8, 28.)  "Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation."  *Mallory v. Smith*, No. 3:17-CV-P253-CRS, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases).

#### 2.   *Respondeat Superior, Vicarious, or Supervisory Liability Claims*

To the extent that Chapple suggests that some defendants can be liable for other individual's actions, those claims should be dismissed.  Defendants "cannot be held liable under

section 1983 on a *respondeat superior* or vicarious liability basis." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)).

To the extent that these Defendants may hold supervisory positions over other Defendants, there are no allegations in the Complaint that would allow them to be held liable on that basis. To do so, Plaintiff must allege '[a]t a minimum' . . . that the defendant[s] 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020), *cert. denied sub nom. Hedger v. Graves*, 141 S. Ct. 2698 (2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)). No such allegations are made in the Complaint, and any such claims should be dismissed.

### 3. *Claims against Penny Perry*

Chapple names Chief of Corrections Penny Perry as a defendant in the caption of his Complaint. (Complaint, PageID 12.) However, to the Undersigned's review, no allegations against Perry appear in the Complaint. She should therefore be dismissed as a defendant.

"The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the

30

complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012).

As noted above, Defendant Perry cannot be held liable as a supervisor or on a respondeat superior basis. As the Complaint contains no factual allegations to permit such liability, the Undersigned **RECOMMENDS** that all claims against Penny Perry be **DISMISSED**.

4. *Claims against Non-Defendants*

In the body of the Complaint, Chapple describes actions by several officers that he identifies by name, but has not named as defendants. (Complaint, ¶ 2 (Hubbard); ¶ 12 (Taylor); ¶ 14 (Corrtrill, Sinford, Mr. H); ¶ 15 (Hood); ¶ 15 (Farnsworth, Brost); ¶ 19 (Joyce); ¶ 20 (Farnsworth); ¶ 21 (Blade, Gamersfelter) ¶ 22, 28 (Carman); ¶ 25 (Walker, Thompson), ¶ 27 (Melzer); ¶ 33 (Fowler)). Because these individuals are not named as defendants and are not parties to this case, the Undersigned declines to analyze Chapple's statements with respect to these non-defendants and **RECOMMENDS** that any purported claims with respect to them be **DISMISSED**. S*ee Shipp v. CoreCivic*, No. 16-2891, 2018 WL 4265259, at *5 (W.D. Tenn. Sept. 6, 2018) (not analyzing allegations against individuals discussed in the complaint but not named as defendants).

5. *Claims on Behalf of Other Inmates*

To the extent that Chapple attempts to raise claims about actions taken by Defendants toward other inmates, these claims likewise should be dismissed. (*See, e.g*., Complaint, ¶ 33 (dirty water given to inmates); ¶ 13 (food trays dropped but still distributed to inmates)).

Chapple does not have standing to bring § 1983 claims on behalf of other inmates.  *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso*, 569 F.3d 258, 276–77 (6th Cir.2009)); *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (citation omitted).  Thus, the Undersigned **RECOMMENDS** that, to the extent Chapple attempts to bring claims on behalf of other inmates, such claims be **DISMISSED**.

## IV.    Conclusion

Having conducted the initial screen required by law, the Undersigned **RECOMMENDS** that the Court allow Chapple to **PROCEED** at this time on his excessive force claims against Defendants Curren, John Jones, Sgt. Neal, Robinson, Bateman, and Sgt. Neely (in their individual capacities).

The Undersigned **RECOMMENDS** that the Court allow Chapple to **AMEND** the one conditions of confinement claim identified above in Section III.B.2 (Paragraph 11), and the religious rights claim identified in Section III.G (Paragraph 5) within **THIRTY (30) DAYS** of any Order adopting this Report and Recommendation.

The Undersigned further **RECOMMENDS** that the Court **DISMISS** the remaining claims against the remaining defendants (and non-parties) in the Complaint.  Should the District Judge adopt this recommendation, the Undersigned further **RECOMMENDS** that the District Judge find that any appeal in this matter by Plaintiff would not be taken in good faith, and that Plaintiff may not proceed on appeal *in forma pauperis*.

32

The Clerk is **DIRECTED** to send a copy of this Order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

Chapple is reminded that he must keep this Court informed of his current address and promptly file a notice of his new address if he is released or transferred to a different institution.

### <u>Procedure on Objections to Report and Recommendation</u>

If any party objects to this Report and Recommendation, that party may, **<u>within fourteen (14) days</u>** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: March 23, 2022     */s/ Elizabeth A. Preston Deavers*
             ELIZABETH A. PRESTON DEAVERS
             UNITED STATES MAGISTRATE JUDGE