IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JEFFREY LYNN CHAPPLE, Jr.,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:21-cv-05086 |
| v. : | |
| : | Chief Judge Algenon L. Marbley |
| **FRANKLIN COUNTY SHERIFF'S** : | Magistrate Judge Elizabeth P. Deavers |
| **OFFICERS FCCC 1 & 2,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**OPINION & ORDER**

This matter comes before the Court on the Magistrate Judge's March 23, 2022, Report and Recommendation (ECF No. 24). Plaintiff timely objected to the Report and Recommendation (ECF No. 26). For the following reasons, Plaintiff's Objections are **SUSTAINED IN PART** and **OVERRULED IN PART**, and the Report and Recommendation is **ADOPTED AS MODIFIED**.

I.    BACKGROUND

Plaintiff Jeffrey Lynn Chapple is currently detained at the Franklin County Corrections Centers (collectively, "FCCC"),[1] where he is awaiting trial before the Court of Common Pleas for

---

[1] There are two correctional facilities in Franklin County: Franklin County Corrections Center I ("FCCC I"), which is located at 370 S. Front St., Columbus, OH 43215, and Franklin County Corrections Center II ("FCCC II"), which is located at 2460 Jackson Pike, Columbus, OH 43223. *See* Divisions: Corrections, FRANKLIN CNTY. SHERIFF'S OFFICE, https://sheriff.franklincountyohio.gov/About/Divisons/Corrections. Chapple refers to Franklin County Corrections Center 1 & 2 in his pleadings, presumably referring to FCCC I and FCCC II, respectively. He was in custody at FCCC I when he filed the Complaint in this case. (ECF No. 1-1 at 12). The Complaint refers to incidents at both facilities.

1

Franklin County.[2] (ECF No. 23 at 1–3).[3] In his Complaint, Chapple names over twenty defendants — some known and some unknown — who all appear to be officers or officials of the Franklin County Sheriff's Office and/or the FCCC. (*Id.* at 1, 4, 7). The Complaint lists thirty-three (33) specific allegations of wrongdoing by Defendants over a fourteen-month period, written as a narrative of apparently unconnected events. (*See id.* at 5, 8–16). These allegations range from the inconveniences of custodial life to accusations of excessive force. Ultimately, Chapple requests this Court investigate the facts underlying his Complaint and take action to address the pain and suffering he has experienced. (*Id.* at 6).

Chapple, proceeding without the assistance of counsel, filed this action on October 10, 2021 (ECF No. 1). The Magistrate Judge granted him leave to proceed *in forma pauperis* (ECF No. 22). Because this case involves a plaintiff proceeding *in forma pauperis*, this Court must conduct an initial screening of the Complaint. 28 U.S.C. §§ 1915(e)(2), 1915A(b). Magistrate Judge Deavers issued her Report and Recommendation (ECF No. 24) pursuant to the screening requirement on March 23, 2022. Chapple now objects to the recommendations (ECF No. 26).

## II. STANDARD OF REVIEW

If a party objects within 14 days to the magistrate judge's proposed findings and recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The district court may "accept, reject or modify the

---

[2] The Franklin County Clerk of Courts' Case Information website reflects that Chapple is the defendant in the case docketed as No. 20 CR 003865. *See Case Information Online*, FRANKLIN CNTY. CLERK OF CTS., https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (search case field for "20 CR 003865").

[3] Chapple's Complaint is attached as an exhibit to his Motion for Leave to Proceed In Forma Pauperis (ECF No. 1-1) and docketed independently (ECF No. 23). This Court refers to ECF No. 23 when citing to the Complaint for consistency. The docket items are identical.

recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b). On the other hand, if a party fails to object timely to the magistrate's recommendation, that party waives the right to *de novo* review by the district court of the report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Waiver does not, however, "preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Id.* at 154.

A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The onus is on the objecting party "to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quotation marks and citation omitted). When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report[, which] has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

In actions brought by "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," the Court must dismiss any complaint, or portion thereof, that is "frivolous, malicious, fails to state a claim . . . [or] seeks monetary relief from a defendant who is immune to such relief" in its initial screening. 28 U.S.C. § 1915A(a)–(b). This Court assesses whether a plaintiff has stated a claim under § 1915A under the same framework as the Rule 12(b)(6) dismissal standard outlined in *Ashcroft v. Iqbal*, 556 U.S 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) — that is, to survive the initial screening, a

3

prisoner's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 570–71 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). And though the court "need not accept as true a legal conclusion couched as a factual allegation," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).

Finally, allegations in a *pro se* complaint are subject to "'less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)), but even "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (internal citations omitted).

### III. LAW & ANALYSIS

The Magistrate Judge interpreted Chapple's broad plea for relief as an attempt to raise claims of constitutional deprivation under 42 U.S.C. § 1983 and grouped the 33 incidents mentioned by Chapple into the following eight (8) categories of claims: (1) official capacity claims; (2) conditions of confinement claims; (3) personal property claims; (4) disciplinary claims; (5) grievance procedure claims; (6) failure to protect claims; (7) religious rights claims; and (8) excessive force claims. (ECF No. 24 at 3–4). The Magistrate's Report and Recommendations

suggested that this Court dismiss all claims against Defendants in their official capacities. (*Id.* at 6). The magistrate also recommended that this Court: (1) allow Chapple to proceed on his excessive force claims against Defendants Curren, John Jones, Sgt. Neal, Robinson, Bateman, and Sgt. Neely in their individual capacities; (2) provide Chapple with the opportunity to amend his claim regarding the food tray with semen on his fries (ECF No. 23 ¶ 11) and his religious rights claims (ECF No. 23 ¶ 5); and (3) dismiss Chapple's remaining claims. (*Id.* at 32).

Chapple's Objections (ECF No. 26) consists of three parts. First, Chapple includes an introductory cover page, asserting his opposition to the report and explaining what he has included in the objection. (ECF No. 26 at 1). Much of the introduction is, in truth, a general objection to the Report and Recommendation; Chapple asserts that "[n]one of [his] claims should be dismissed because they're all facts and blood" and that he "object[s] to all the claims thats [sic] been dismissed." (*Id.*). An objection that simply rejects the Magistrate's Report whole-cloth and does not identify any specific issues "has the same effects as would a failure to object" and thus does not necessitate *de novo* review by this Court. *Howard*, 932 F.2d at 509. By contrast, the statements in the introduction about trash-contaminated beverages given to inmates at FCCC and about the identity of officers who tampered with Chapple's food trays do focus on specific facts and, therefore, warrant further analysis. *See infra* Parts III.C.2–3.

Second, Chapple includes two petitions that he circulated to other inmates. (*See* ECF No. 26 at 2–4). The first asks whether FCCC officers should be required to wear bodycams; it is signed by thirteen individuals, who broadly support the use of bodycams as a means of keeping officers and deputies accountable and honest. (*Id.* at 2–3). The second petition simply asks other inmates to describe problems that they have faced from FCCC officers; only three (3) individuals responded to this petition. (*Id.* at 4–5). While these petitions effectively draw attention to the

5

troubling conditions at FCCC, they do not identify specific issues of contention with the Magistrate's Report. *See Currie*, 50 F.3d at 380 (noting that objections should "be clear enough to enable the district court to discern those issues that are dispositive and contentions"). Nor do the petitions sufficiently demonstrate "the existence of a custom of tolerance of acquiescence of federal rights of violations" such that Chapple can sustain an allegation of unconstitutional Franklin County policy, *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)), especially since only one of the thirteen signatories of the first petition lists any alleged officer misconduct.

Finally, Chapple provides ten pages of objections, with each page addressed to a particular Defendant and focused on a specific incident from the Complaint. (*Id.* at 5–14). In keeping with the liberal construction afforded *pro se* litigants, *see Williams*, 631 F.3d at 383, this Court organizes Chapple's ten objections to align with the Magistrate Judge's categorization of Chapple's claims. Thus, this Court reads Chapple's Objections (ECF No. 26) to focus on his personal property, disciplinary, conditions of confinement, verbal harassment, and failure-to-protect claims. Each claim and its corresponding objections are addressed in turn.[4]

A. **Personal Property Claims**

The Magistrate's Report and Recommendation found that, because Chapple failed to "allege[] any facts which indicate that the state post-deprivation remedies are inadequate or unavailable to redress the wrong," his personal property claims must be dismissed. (ECF No. 24 at 19 (quoting *Thompson v. Esham*, 2016 WL 692542, at *1 (S.D. Ohio Feb. 22, 2016) (citing

---

[4] The following analysis discusses all but one of Chapple's ten objections. His first objection (ECF No. 26 at 5) simply expresses his general frustration with the conditions of his confinement and objects to the Magistrate's recommendation that his claim about semen on his fries be dismissed. (*Id.*). As the Magistrate did not, in fact, dismiss that claim and as general objections are construed as a failure to object, this Court does not address Chapple's first objection further.

6

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995))))). Chapple's second and ninth objections (ECF No. 26 at 6, 13) both contest the magistrate's conclusion. Neither, however, directly addresses the claims that the Magistrate Judge considered, disputes any of the facts cited in the Report and Recommendation, or suggests any missteps in the legal analysis. (*See* ECF No. 26 at 6, 13). Instead, the objections simply re-state the factual allegations that Chapple provides in his Complaint. (*Compare, e.g.*, ECF No. 26 at 13, *with* ECF No. 23 ¶ 7). Because these objections merely dispute the correctness of the Magistrate Judge's recommendation without specifying any issues of contention, this Court construes Chapple's second and ninth objections as general objections. *See Miller*, 50 F.3d at 380. Accordingly, Chapple's second and ninth objections are **OVERRULED**. Chapple's personal property claims are **DISMISSED**.

### B. Disciplinary Claims

With respect to Chapple's disciplinary claims, the Magistrate Judge found that "the discipline [Chapple] describes is not excessive or disproportional to his alleged behavior and does not rise to the level of a constitutional violation," especially since "Chapple acknowledges in the Complaint several behaviors that would reasonably prompt disciplinary measures." (ECF No. 24 at 21 (citing ECF No. 23, Complaint, ¶¶ 10, 14, 20)). Accordingly, the Report and Recommendation concluded that the disciplinary claims should be dismissed. (*Id.*).

Chapple's second and tenth objections (ECF No. 26 at 6, 14) address that recommendation. The objections, however, do not state with any specificity why this Court should review the Magistrate Judge's recommendation to dismiss, or pinpoint any legal arguments that are off the mark, *see Mira*, 806 F.2d at 637, but only mention once more his allegations of being moved to a different cell and having his security level increased. (ECF No. 23 at 14). This Court therefore at most construes Chapple's second and tenth objections as general objections. Accordingly,

Chapple's second and tenth objections are **OVERRULED**, and his disciplinary claims are **DISMISSED**.

## C. Conditions of Confinement Claims

By contrast, Chapple's objections to the Magistrate Judge's recommendations with respect to his conditions of confinement claims do identify specific facts. (*See* ECF No. 26 at 1, 7–8, 10–11). Chapple notes, for example, that he was given juice from a bag that had been in a trash can and that the water provided to inmates is full of lead. (*Id.* at 1, 8, 11). He also contends that he was placed overnight in a cell that had blood and feces "all over the floors, walls, sink & toilet." (*Id.* at 7). This Court understands Chapple's mention of these facts as, in effect, objections to the magistrate's recommendation that this Court dismiss all but one of his conditions of confinement claims. (*See* ECF No. 24 at 18).

Conditions of confinement claims are typically scrutinized under the Eighth Amendment, which "imposes duties on [prison] officials, who must provide humane conditions of confinement[,] . . . must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *see also Helling v. McKinney*, 509 U.S. 25, 31 (1993). Of course, Chapple is a pretrial detainee, not a prisoner whose guilt has already been adjudicated, and so he is protected from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, rather than by the Eighth Amendment. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005)). Although the Fourteenth Amendment's Due Process Clause provides protections "at least as great as" the Cruel and Unusual Punishments Clause, *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998), courts have typically applied the same Eighth Amendment conditions of confinement

analysis to claims by pretrial detainees. *See, e.g.*, *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("This Court has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013))).

Traditionally, such claims have had an objective and a subjective component, wherein the prisoner or pretrial detainee must show both that "he is incarcerated under conditions posing a substantial risk of serious harm," *see Farmer*, 511 U.S. at 834, and that the defendants "(1) were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) actually drew the inference; and (3) consciously disregarded the risk." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726–27 (6th Cir. 2022) (quoting *Farmer*, 511 U.S. at 834). But, in the aftermath of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Sixth Circuit held that the traditional subjective prong was no longer appropriate in analyzing claims by pretrial detainees. *See Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021), *reh'g en banc denied*, 18 F.4th 551 (6th Cir. 2021). Instead, a pretrial detainee seeking to establish deliberate indifference need not show that "the officers were subjectively aware their use of force was unreasonable," but must only prove that "a defendant . . . acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 596 (quoting *Farmer*, 511 U.S. at 836)). A pretrial detainee, in other words, must demonstrate "something akin to reckless disregard," which is "more than negligence but less than subjective intent." *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

9

Of course, a pretrial detainee who seeks to allege a conditions of confinement claim must still demonstrate a sufficiently serious deprivation: that he was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 840 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That prong of the *Farmer* test has not changed. Whether a deprivation meets the sufficiently serious standard depends on both the severity of the deprivation, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the duration. *See Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). A more modest deprivation, for example, can still constitute an Eighth Amendment violation "if such deprivations are lengthy or ongoing." *Spencer*, 449 F.3d at 729 (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000)).

The Magistrate's Report and Recommendations organized Chapple's conditions-of-confinement claims into three categories: (1) sanitation and hygiene issues; (2) food tray issues; (3) water issues. This Court addresses each category in turn, in light of Chapple's Objections and the foregoing legal framework:

### 1. Sanitation and Hygiene Issues

Chapple's third and eighth objections (ECF No. 26 at 7, 12) identify specific facts that contest the Magistrate Judge's conclusion that all claims arising out of his sanitation and hygiene issues should be dismissed.[5] The Magistrate's Report found that "Chapple's bare assertion that the cell he was in for one day was 'nasty' is insufficient to state a claim . . . [or] a sufficiently

---

[5] The specific facts identified by Chapple are new facts not contained in his Complaint. New facts are typically not considered by the district court when evaluating objections to a magistrate's report and recommendation, *see Norton v. Barker*, 2021 WL 4128865, at *2 (E.D. Tenn. Sept. 9, 2021) ("Therefore, the Court declines to consider new facts raised in Plaintiff's Objections."), but "when the pleadings are filed by pro se plaintiffs, the court may consider additional, supporting documents which either serve to elaborate on a complaint or amend the initial filing." *Tolliver v. Noble*, 752 F. App'x 254, 266 (6th Cir. 2018) (citations omitted). In consideration of Chapple's *pro se* status, the Court will consider Chapple's additional factual allegations in his Objections (ECF No. 26) when considering whether his claims should be dismissed pursuant to the initial screening required by 28 U.S.C. § 1915A(b).

serious deprivation of Chapple's need for sanitation." (ECF No. 24 at 10 (internal citations omitted)). The Report and Recommendation pointed out that the Complaint only states Chapple's need for cleaning supplies but "does not describe cell conditions [at the prison] for which he needed [those] materials." (*Id.* at 11 (quoting ECF No. 1 ¶ 16)). By contrast, Chapple's third and eighth objections do more than just allege bare assertions of "nastiness"; instead, Chapple states with specificity that, on April 30, 2021,[6] he was moved to 3 West Left Cell 3, which "had blood & do-do [sic] & other things all over the floors, walls, sink & toilet." (ECF No. 26 at 7). He further alleges that, in January 2021, he was placed in a room with "do-do & food dried up on the walls, floor & toilet & sink was nasty." (*Id.* at 12).

Although a short, temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test, *see Lamb*, 677 F. App'x 209–10 (finding that an inmate's four-hour exposure to flooding water from the toilet was insufficient to state a constitutional claim), Chapple here alleges at least an overnight stay in a cell covered in feces. (*See* ECF Nos. 23 ¶ 16; 26 at 7). Longer-term exposure to fecal matter has been deemed sufficient to state a claim for relief under the Eighth Amendment. *See Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (three day stay in cell covered with fecal matter). Exactly how many hours an inmate must be exposed to fecal matter to establish a constitutional violation appears, at times, to involve arbitrary line-drawing, *compare DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (finding 36 hour exposure to other inmates' urine and feces in standing water qualified as a

---

[6] The precise date of this event is unclear. In Chapple's Objections, he states that this incident happened on April 30, 2021, when he was moved from 3 West Left Cell 5 to Cell 3. (ECF No. 26 at 7). In the Complaint, on the other hand, Chapple states that the same event (i.e., being moved from Cell 5 to Cell 3) happened on July 14, 2021. (ECF No. 23 ¶ 16). This Court presumes that Chapple refers to the same event in both scenarios, in keeping with the liberal construction afforded *pro se* litigants. This Court will continue to refer to this incident as happening on April 30, 2021, in this Order & Opinion for consistency.

11

significant deprivation), *with Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (dismissing a plaintiff's exposure to an overflowed toilet, and his own feces and urine, for four days as insufficiently serious), especially in light of the fundamental reality that "placing a prisoner in a cell covered with fecal matter . . . 'falls below the standard of decency that inheres in the Eighth Amendment'" and, therefore, in the Fourteenth Amendment as well. *Taylor*, 505 F. App'x at 477 (quoting *Brown v. Plata*, 563 U.S. 493, 545 (2011)). This Court finds that Chapple's allegations of exposure to feces and blood on the floor, walls, sink, and toilet during his overnight stay in 3 West Left Cell 3 on April 30, 2021, satisfies the first prong of the *Farmer* test.[7] *See Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) (noting that "courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste"); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001); *Michaud v. Sheriff of Essex Cnty.*, 458 N.E.2d 702, 705–06 (Mass. 1983).

The second prong, as modified by *Brawner*, is also met. The risks of exposure to human feces and blood are well-established and patently obvious. *See Taylor*, 505 F. App'x at 477; *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (deeming it "unquestionably a health hazard" to sleep on a mattress soaked with water contaminated with human waste); *Fruit*, 905 F.2d at 1150–51 (noting that "'common sense' suggests that [prison officers] should have had knowledge that unprotected contact with human waste could cause disease"); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."). Here,

---

[7] Chapple's eighth objection (ECF No. 26 at 12) describes an incident in January 2021 where he was placed by Lieutenant Benson in a cell with "do-do and food dried up on the floor." (ECF No. 26 at 12). This Court is unable to find a corresponding incident in the Complaint, based on either the date or the situation described. Consequently, this Court is unable to evaluate the length of time that Chapple was exposed to the conditions described.

Sergeant Howard initially planned to leave Chapple in a cell for five days, where the deprivation and danger was readily perceivable. (*See* ECF No. 23 ¶ 16). Chapple has provided enough allegations to state a plausible claim that Sergeant Howard acted with reckless disregard in exposing Chapple to a sufficiently serious deprivation. *See Brawner*, 14 F.4th at 596; *see also Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020).

Accordingly, Chapple's objection are **SUSTAINED** with respect to his overnight stay in 3 West Left Cell 3 on April 30, 2021 (ECF Nos. 23 ¶ 16; 26 at 7). Chapple is given **LEAVE TO AMEND** his claims regarding the condition of the cell he was placed in during the January 2021 incident (ECF No. 26 at 12) to address the deficiency about the duration of his stay in that cell. The remainder of his sanitation and hygiene conditions-of-confinement claims are **DISMISSED**.

### 2. Food Tray Issues

The Magistrate's Report and Recommendations recommended that all of Chapple's food tray claims be dismissed, except for the incident where he was given "fries [that] had body fluids 'cum' on them." (ECF No. 23 ¶ 11). The Magistrate noted that the Complaint contains "no allegations . . . about *who* purportedly tampered with Chapple's food trays," whereas § 1983 claims require that the violation of a constitutional right be committed by a person acting under color of state law. (ECF No. 24 at 16). The introduction of Chapple's Objections clarifies that, at least for the semen incident, he is alleging specifically that "*John Jones & T. Kirkpatrick* placed cum on my fries and bit from my bagel."[8] (ECF No. 26 at 1 (emphasis added)). Elsewhere in the introduction, Chapple writes that "when [he] see[s] the tray and it's messed up, it's not a difficult question who done mess with the tray" based on which officer gave Chapple the tray and whether

---

[8] Although this allegation is also a new fact, this Court takes it into consideration in evaluating Chapple's claims, pursuant to the liberal construction afforded *pro se* plaintiffs. *See supra* Part III.C.1 n.6.

13

that officer had any problems with Chapple. (ECF No. 26 at 1). Although this statement comes closer to alleging that certain officers messed with the trays for his other food tray claims, it does not rise above the level of mere suspicions.

Moreover, the lack of specific allegations against defendants acting under the color of state law was not the only flaw identified with Chapple's food tray claims; Chapple also failed to provide any specificity about what was wrong with his food trays beyond the fact that they were "messed with" (except, again, for the incident with the fries). (*See* ECF No. 24 at 12). This missing information was not addressed at all in Chapple's objections. In other words, Chapple has failed to identify any specific defendants acting under color of state law or described how his food was messed up with respect to his other food tray claims.

Accordingly, this Court **SUSTAINS** Chapple's objection regarding the claim in Paragraph 11 of the Complaint; he may **PROCEED** on his claim against John Jones and Kirkpatrick that they placed semen on his fries (ECF No. 23 ¶ 11). His remaining food tray objections are **OVERRULED** and those claims are **DISMISSED**.

### 3. Water Issues

The introduction of Chapple's Objections, the fourth objection, and seventh objection (ECF No. 26 at 1, 8, 11) allege specific facts that contest the Report and Recommendation's analysis of Chapple's water issue claims. In the Complaint, Chapple merely alleges that something is wrong with the water at FCCC, but "does not articulate what is wrong with the water, or describe how it looks, tastes, or makes him feel." (ECF No. 24 at 17). The Objections, on the other hand, are far more specific. Chapple suggests that Officer Crunkshank, who was not named in the Complaint, gave inmates juice from "a bag that was opened & sitting inside of a trash can that had trash in it." (ECF No. 26 at 1, 8). He also suggests that the water at FCCC is "full of lead." (*Id.* at 11).

14

Courts have found that "the right to be free from deliberate indifference to serious medical needs" encompasses claims by inmates against prison officers who knowingly failed to protect inmates from exposure to toxins, such as friable asbestos or environmental tobacco smoke. *LaBounty v. Coughlin*, 137 F.3d 68, 72–74 (2nd Cir. 1998); *see also Helling*, 509 U.S. at 35. Whether *Kingsley* requires the modification of the traditional subjective prong of deliberate indifference claims with respect to environmental hazards is unknown, *see supra* Part III.C, but Chapple's water issue claim falls short under either the subjective or modified standards. There is no doubt that exposure to lead in drinking water would pose a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Chapple has not, however, provided factual allegations, in the Complaint or in his Objections, that any of the defendants either had knowledge about the presence of lead in the FCCC water or should have known about the lead. *Cf. Brawner*, 14 F.4th at 596 (defining reckless disregard in the Fourteenth Amendment deliberate indifference context as acting deliberately and "recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotations omitted)).

Accordingly, Chapple's objections with respect to his water issue claims are **OVERRULED**.

### D. Verbal Harassment

This Court next turns to Chapple's fifth objection (ECF No. 26 at 9), which is directed at the magistrate's determination that his verbal harassment claim is without basis. (ECF No. 24 at 29). The Magistrate's Report and Recommendation correctly notes that, under Sixth Circuit precedent, "[h]arassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation." (*Id.* (quoting *Mallory v. Smith*, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases))). Chapple does not dispute the

15

case law cited by the magistrate or suggest that there are facts that the magistrate overlooked or misunderstood; instead, he simply retells the relevant incidents involving Defendant Boyd "coming and going to my window saying intagonizing [sic] things." (ECF No. 26 at 9). As this objection fails to specify the findings Chapple believes to be in error, Chapple's fifth objection is **OVERRULED**.

### E. Failure-to-Protect Claims

Finally, this Court considers Chapple's failure-to-protect claims, which the Magistrate Judge recommended that this Court dismiss. (ECF No. 24 at 25). In reaching that conclusion, the Report and Recommendation noted that Chapple did not provide any "allegation[s] that the inmates in the medical tank represented a high risk of harm to Chapple that was known or so obvious it should have been known" or "that the officers involved acted with reckless disregard for Chapple's safety." (*Id.*). Chapple's sixth objection addresses this rationale, noting that the other inmates in the medical tank were "predators that has [sic] a history of preying upon the ones weaker than them." (ECF No. 26 at 10).

The Sixth Circuit has extended the *Brawner* modification of the subjective prong of deliberate indifference claims to failure-to-protect claims against individual officers. *See Westmoreland*, 29 F.4th at 728.[9] This standard requires the detainee to show that the officers acted with "reckless disregard," which is met when:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciate the high degree of risk involved — making the consequences

---

[9] The Sixth Circuit's decision in *Westmoreland v. Butler Cnty*, 29 F.4th 721 (6th Cir. 2022) was issued the day after the Magistrate Judge in this case issued her Report and Recommendation (ECF No. 24).

16

>of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 729 (citing *Castro*, 833 F.3d at 1071). Chapple's objection suggests that there was a risk of harm when he was placed in the medical tank; the objection does not, however, suggest that any FCCC officers ignored reasonable available measures to abate that risk, nor does Chapple provide any factual allegations supporting his claim that the other inmates in the tank were "predators" with so notable a history that the high degree of risk was obvious.

Accordingly, Chapple's objections with respect to his failure-to-protect claims are **OVERRULED**.

## IV.  CONCLUSION

This Court has conducted an independent review of the pleadings and arguments. For the reasons discussed above, Chapple's objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. The Magistrate Judge's Report and Recommendation is **ADOPTED AS MODIFIED**. Accordingly, Chapple may **PROCEED** with: (1) the excessive force claims against Defendants Curren, John Jones, Sgt. Neal, Robinson, Bateman, and Sgt. Neely (in their individual capacities); and (2) with the conditions of confinement claims against Defendants Sgt. Howard, John Jones, and Kirkpatrick identified above in Sections III.C.1 and III.C.2 (in their individual capacities). Chapple is granted **LEAVE TO AMEND** the conditions of confinement claim identified in Section III.C.1 and the religious rights claim **WITHIN THIRTY (30) DAYS**. Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

                                                 **ALGENON L. MARBLEY**
                                                 **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  November 7, 2022**